UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LAURA SPECTOR, | ) | No. ED CV 09-01505-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

1        evaluated the medical evidence set forth at AR 273-75;

2    2.   The ALJ's failure to properly evaluate medical evidence set

3         forth at AR 276-79;

4    3.   Failure of the ALJ to properly evaluate the testimony of

5         Plaintiff's sister.

6  (JS at 2-3.)

7

8       This Memorandum Opinion will constitute the Court's findings of

9  fact and conclusions of law.  After reviewing the matter, the Court

10 concludes that the decision of the Commissioner must be affirmed.

11

12                                   **I**

13            **THE ALJ DID NOT FAIL TO PROPERLY EVALUATE MEDICAL EVIDENCE**

14      In Plaintiff's first issue, she asserts that the ALJ failed to

15 properly evaluate a document entitled "Work Capacity Evaluation

16 (Mental)" found at AR 273-75.  In Plaintiff's second issue, she

17 asserts that the ALJ failed to properly evaluate a document entitled

18 "Medical Opinion re: Ability to Do Work-Related Activities (Physical)"

19 found at AR 276-79.

20      The first document, a "Work Capacity Evaluation (Mental)"

21 ("Mental Evaluation") is accompanied by an illegible signature; no

22 name or title of the signer; no identification of any historic

23 treating relationship; no identification that the individual who

24 signed it ever examined Plaintiff; an ambiguous date (is it June 19,

25 1996 or June 19, 2006?); and, no basis upon which to determine the

26 reason for any of the conclusions evidenced by checked boxes.  The

27 document came from the office of Plaintiff's counsel, who represented

28 her at both hearings in this matter, and now represents her in this

action.   The same can be said of the second document, entitled "Medical Opinion re: Ability to Do Work-Related Activities (Physical)" (hereinafter "Physical Evaluation").   Despite all of these characteristics, Plaintiff's counsel now argues to the Court that although the Mental Evaluation signature is "not legible," it is "presumptively prepared by a treating physician." (AR at 5.)[1]   This conclusion is completely unsupported by any authority, and seems to represent nothing more than counsel's own wishful thinking. Plaintiff's counsel cites a regulation, 20 C.F.R. §404.1512(e)(1) for the proposition that the ALJ should have contacted Plaintiff's counsel to make some determination as to the identity of the individual who signed the form, or other missing factors necessary to its evaluation; however, Plaintiff's counsel ignores the fact that the cited regulation presumes that the document comes from a medical source. There can be no such presumption here.   Moreover, Plaintiff's counsel seemingly argues that these assertedly medical documents, which he submitted to the ALJ, and which he concedes have illegible signatures and no other identifying characteristics, somehow shifted the burden to the ALJ to ask him just what it was he intended to submit in support of Plaintiff's case.   The Court takes judicial notice that Plaintiff's counsel is very experienced in Social Security matters, representing claimants both administratively, and in a large volume of cases brought in Federal Court.   As such, Plaintiff's counsel is well

---

[1]   The same characteristics plague the Physical Evaluation, although Plaintiff does not explicitly concede this.   The Court's discussion of the Physical Evaluation, however, is based on the identical reasoning concerning its discussion of the Mental Evaluation.   The Court notes, in passing, that the signature on both documents, and the cryptic dates accompanying the signatures, appear identical.

aware of the regulations and cases which underpin the determination of these matters.  If Plaintiff's counsel intended to submit a piece of probative and relevant evidence, it was his responsibility to provide sufficient identifying information (including, but not limited to, the name of the treating source, the treating relationship, any historical records, and the basis for any conclusions reached) so that the ALJ could have properly evaluated it.  Moreover, even if, hypothetically, either of these forms were submitted by recognized medical sources, the ALJ would have been well within his rights to have rejected them as wholly conclusory "check the box" documents.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

The Court's conclusions are even more reinforced by the fact that in this case, the ALJ took special pains to develop the record, and to obtain any and all relevant medical records supporting a possible disability.  The first hearing was convened on August 2, 2007, but when it developed during the hearing that there might be additional medical records, the ALJ agreed to put the hearing over for thirty days so that Plaintiff's counsel could obtain such records. (See AR at 348-50.)  The ALJ asked Plaintiff to write a list of places she had been treated so that she could coordinate that with her counsel in order to obtain records. (AR 352.)  The ALJ agreed that if any medical sources contacted by Plaintiff's counsel were non-responsive, "we will try and assist you [to obtain the records]." (AR 352-53.)  Later on in the hearing, when Plaintiff herself indicated that she felt some particular records (which were not then provided to the ALJ) were very important, the ALJ commented that, "I mean, she's she sat here and told me that they're very important, and I don't want to make a

decision in the absence -- of very important records." (AR 359-60.)
Finally, the ALJ indicated that if Plaintiff wished to pursue that
portion of her claim pertaining to a certain period of disability
insurance benefits, "... then I think we're probably going to need
some more records from the pre-September of '96 time-frame, at least
enough to establish that she was disabled as of that date, and
continuing for at least a year." (AR 364.)

After giving Plaintiff's counsel adequate opportunity to obtain
additional records, the ALJ reconvened the hearing on October 30,
2007. (AR 366), noting that they had previously adjourned so that
Plaintiff would have "an opportunity to get physical records from '91
to '97, as well." (AR 369.)  In the absence of those records, the ALJ
indicated he would assume that Plaintiff's counsel was unable to
obtain them.  Counsel agreed. (Id.)  Further, this hearing continued
in the same manner as the previous hearing, with the ALJ expressing a
sincere interest in determining where Plaintiff had been treated, and
in what facilities, so that the ALJ would be sure to have the
necessary records.  At the end of the hearing, the ALJ offered
Plaintiff's counsel yet another opportunity to obtain medical records
which might exist based on Plaintiff's testimony. (AR 434.)

The Court need not go into further detail, other than to observe
that this ALJ repeatedly expressed an interest in obtaining any and
all relevant medical evidence and records, and gave Plaintiff's
counsel numerous opportunities to provide such records.  Despite that,
Plaintiff's counsel provided illegible and useless documents such as
those involved in Issues One and Two of this case, and yet now faults
the ALJ for failing to consider these as medical records, or to
develop the record to determine exactly what they were.

The Court considers the arguments advanced by Plaintiff's counsel in the first two issues to be almost frivolous, and certainly, for the reasons stated, without merit.

## II

### THERE WAS NO ERROR REGARDING

### THE EVALUATION OF PLAINTIFF'S SISTER'S STATEMENTS

On August 17, 2005, Plaintiff's sister completed a "Function Report - Adult - Third Party." (AR 119-25.) Plaintiff asserts that the ALJ erred by not even considering this lay witness testimony. (AR 19.) This is factually incorrect. Indeed, the ALJ made a credibility determination as to Plaintiff's own statements and those of her sister. (AR 27.) It is noted that Plaintiff does not have any disagreement with the depreciated credibility which she was accorded by the ALJ. In particular, the ALJ assessed that Plaintiff was not truthful in her testimony and exaggerated her pain and symptoms. (Id.) He also noted that Plaintiff gave a very poor effort during a 2007 pulmonary function test examination. (AR 25.) The ALJ noted a history of malingering as evidenced by Plaintiff's physician's notation of her invalid test results and her over-reporting of symptoms. (AR 27, 269.) Thus, as it was Plaintiff herself who was demonstrably untruthful, exaggerating her pain and symptoms, no greater credibility can be accorded to a third party witness who reported her observations of these exaggerated symptoms. Moreover, while Plaintiff's sister rendered opinions as to all aspects of Plaintiff's daily functioning, such as taking medication, doing housework, grooming, running errands, difficulty breathing during sleep, and other things, the fact is that she appears to have very limited contact with Plaintiff, which she

described as "assist[ing] ... person with errands by providing transportation." (AR 119.)   It does not appear that she lives with Plaintiff.   The fact that she is a blood relative does not mean that she has sufficient or extensive enough contact with Plaintiff to provide opinions on matters which could not possibly occur (such as difficulty breathing while sleeping) while she is in contact with her.

The Court finds that the ALJ justifiably disregarded the credibility of the opinions of Plaintiff's sister regarding Plaintiff's limitations and related matters.

The decision of the ALJ will be affirmed.   The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: May 11, 2010                    /s/
                              VICTOR B. KENTON
                              UNITED STATES MAGISTRATE JUDGE